Verna ROBERTS, Appellant,

v.

HOUSTON INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 01–89–00329–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 15, 1990.

Rehearing Denied April 12, 1990.

George M. Kirk, Houston, for appellant.

Michael Kuhn, Houston, for appellee.

Before EVANS, C.J., and DUGGAN and MIRABAL, JJ.

## OPINION

EVANS, Chief Justice.

This is an appeal from a judgment upholding a school district's administrative decision to terminate appellant's employment for inefficiency or incompetency in the performance of duties. The cause was submitted to the trial court on an agreed stipulation of facts and exhibits, and on appeal, only a question of law is presented for review.

The stipulation of facts shows that appellant, Verna Roberts, had a continuing teacher's contract with the Houston Independent School District (school district). On numerous occasions during school years 1982–1983 and 1983–1984, the school district's assessment team, composed of an associate superintendent and an instructional supervisor, evaluated appellant's teaching performance. These evaluations included both written assessments and videotaping of appellant's classroom performance. The evaluation team used videotapes so that the teacher could more easily follow and understand the evaluation team's observations and criticisms. Appellant objected to the use of videotaping in her classroom.

Both the written evaluations and videotapes revealed problems with appellant's teaching performance. Appellant was told of these problems, but according to the assessment team, she did not correct or improve her performance. Based on appellant's classroom performance, the assessment team recommended that the school district terminate her employment at the end of the 1983–84 school year. (Appellant's contract allowed for termination for inefficiency or incompetence in the performance of duties.) The deputy superintendent accepted this recommendation and, in turn, recommended termination to the general superintendent. The deputy superintendent and three members of the assessment team met with appellant and notified her of the recommendation and the reason for their recommendation. On March 9, 1984, the board of education authorized the

general superintendent to notify appellant that it had proposed her employment be terminated at the end of the 1983–84 school year, for cause pursuant to Tex.Educ.Code Ann. secs. 13.109(4), 13.110(1), (2) (Vernon 1972 & Supp.1990).

Appellant then notified the school district of her desire to contest the proposed termination and asked for a public hearing, which was scheduled for June 2, 1984. About 45 days before the hearing, appellant and her attorney were notified of the date, time, place, and procedures to be used at the termination proceedings. Appellant and her attorney were later given a witness list, a description of the testimony to be provided at the hearing, and a copy of the exhibits to be used. Appellant was not, however, given a copy of the videotape exhibits. Appellant asked for copies of all videotapes made of her classroom performance, but the school district refused. The school district did make the tapes available for appellant's review and inspection at its administrative offices.

On June 2, 1984, the school board heard testimony from appellant's supervisors, and it reviewed approximately 100 documents offered as evidence of appellant's classroom performance. The school board also viewed a 30–minute videotape, which included excerpts from the five separate videotapes made of appellant's classroom performance. The five tapes were all used by the assessment team in its evaluation of appellant's classroom performance.

Appellant chose not to testify at the hearing, and she did not present any witnesses or evidence on her own behalf. She limited her presentation to the cross-examination of appellee's witnesses. The hearing lasted approximately six hours, and at the end of the hearing, the school board voted unanimously to terminate appellant's employment at the end of the 1983–84 school year.

In her first point of error, appellant claims the trial court's judgment is flawed, as a matter of law, because she was denied both procedural and substantive due process in the termination proceedings.

I. *Procedural Due Process*

Appellant, as the holder of a continuing contract with the school district, possessed a property interest in her continued employment. *See* Tex.Educ.Code Ann. secs. 13.101–13.116 (Vernon 1972 & Supp.1990), & secs. 21.201, 21.211 (Vernon Supp.1990). The state may not deprive a person of a property interest without due process of law. *See Findeisen v. Northeast Indep. School Dist.*, 749 F.2d 234, 235 (5th Cir. 1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2657, 86 L.Ed.2d 274 (1985). At the very least, the law requires that a public employee with a protected right in continued employment be given notice and an opportunity to reply prior to termination. *Bueno v. City of Donna*, 714 F.2d 484, 493 (5th Cir.1983).

The record reflects that appellant did receive notice and had an opportunity to respond before the termination of her employment.

On February 29, 1984, the deputy superintendent and members of the assessment team met with appellant, and explained their recommendation that the school district terminate her employment at the end of the 1983–84 school year. On March 12, 1984, the general superintendent wrote to appellant, notifying her of the proposed termination of her employment. In that letter, the general superintendent discussed the sections of appellant's contract upon which the school district was basing the proposed termination, and he enumerated specific complaints about her teaching performance. The superintendent stated that appellant had 10 days after receipt of the letter to notify him of her desire to contest the proposed termination, and that she could obtain copies of the evaluation reports and memoranda "touching or concerning" her "fitness or conduct as a teacher."

Appellant also received notice of the time, date, and place of the termination hearing. The school district notified appellant of the witnesses and testimony it would be offering, and gave appellant an opportunity to cross-examine each school

district witness and produce evidence on her own behalf.

■ Appellant's principal contention is that she did not have notice of the contents of the edited videotape. We reject this contention. Appellant was told she could view the unedited videotapes at the school district's offices during regular business hours at any time between May 17, 1984, and June 2, 1984. This was about 10 days before the hearing. Appellant had also previously reviewed the tapes with the members of her assessment team after each evaluation. Although appellant was not given an opportunity, before the hearing, to view the composite tape that had been edited from the five evaluation tapes, she was given ample opportunity to view the five videotapes from which the composite was made. She simply chose not to do so.

## II. *Substantive Due Process*

Appellant argues that the administrative hearing, which resulted in her termination, violated her right of due process because "of the nature of the evidence presented and the resulting inability of (appellant) to defend against the evidence as presented."

■ In evaluating a substantive due process claim, based on allegedly arbitrary state action in academic matters, a reviewing court must ascertain whether the state's action was "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Regents of the Univ. of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985); *see also Eiland v. Wolf*, 764 S.W.2d 827, 835 (Tex.App.—Houston [1st Dist.] 1989, writ denied). In a suit challenging an academic dismissal, the reviewing court must determine from the record whether there was "some rational academic basis for the decision." *Eiland*, 764 S.W.2d at 835. If there was a rational academic basis for the decision, the court may not override the state's action, even though the evidence may indicate such action was arbitrarily made. *Id.*

■ Here, the school board listened to six hours of testimony and other evidence before deciding to terminate appellant's employment. The board reviewed appellant's teaching evaluations, listened to testimony of appellant's supervisors, and viewed a 30-minute composite videotape of appellant's teaching. Appellant was represented by her attorney during the hearing, she was given an opportunity to testify and to present witnesses on her own behalf, and she was allowed to cross-examine the witnesses called by the school district. Appellant could have even shown portions of the unedited videotapes, had she chosen to do so.

We conclude that the school board did not act arbitrarily or deviate from accepted academic norms in reaching its judgment to terminate appellant's employment.

■ Appellant further complains that the board saw the composite videotape without any showing that the tape was authentic, and that the tape was not made available to her for copying before the hearing.

■ Although an administrative proceeding must meet minimum requirements of due process, strict rules applicable to courts of law do not apply to such proceedings. *Lewis v. Metropolitan Sav. & Loan Assoc.*, 550 S.W.2d 11, 13, 16 (Tex.1977); *Murphy v. Rowland*, 609 S.W.2d 292, 296 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). In the absence of some showing that the school district acted arbitrarily in considering the composite videotape, or that the videotape falsely or inaccurately presented appellant's teaching performance, we can only conclude that the administrative proceedings complied with applicable substantive due process requirements.

We overrule appellant's first point of error.

■ In her second point of error, appellant contends that the trial court erred in granting a judgment for the school district because the termination proceedings violated her right of privacy. Under this point, appellant argues that she had an expecta-

tion of privacy in her classroom to be free from intrusion by videotaping, and that by videotaping her performance, over her objection, the school district violated her right of privacy as well as its own policy.

In support of this contention, appellant cites *Texas State Employees' Union v. Texas Dept. of Mental Health & Mental Retardation*, 746 S.W.2d 203 (Tex.1987). There, the court held that the Texas Constitution protects personal privacy from unreasonable intrusion. *Id.* at 205.

Appellant has not cited any authority, and we have found none, relating to her claim of "involuntary videotaping" of her performance as a teacher. Based on the record before us, we conclude that appellant has not demonstrated that she had a "reasonable expectation of privacy" in her public classroom. The record shows that appellant was videotaped in a public classroom, in full view of her students, faculty members, and administrators. At no point, did the school district attempt to record appellant's private affairs.

The activity of teaching in a public classroom does not fall within the expected zone of privacy. To fall within the "zone of privacy," the activity must be one about which the individual possesses a reasonable expectation of privacy in the activity. *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967).

The right of privacy has been defined as the right of an individual to be left alone, to live a life of seclusion, to be free from unwarranted publicity. *Billings v. Atkinson*, 489 S.W.2d 858, 859 (Tex.1973). There is no invasion of the right of privacy when one's movements are exposed to public views generally. *United States v. Arredondo–Morales*, 624 F.2d 681, 685 (5th Cir. 1980).

The second point of error is overruled.

Appellant contends, in her third point of error, that the school district violated its own policy against involuntary videotaping. Under this point, she refers to the school district's Administrative Procedure Guide, section 572.720, which provides:

No mechanical or electronic device shall be utilized to listen to or record the procedures unless requested or permitted by the teacher.

The school district responds to this argument by suggesting that a newer administrative procedure manual has repealed section 572.720, and that the new manual provides:

The Teacher Quality Assurance Program was adopted by the Board of Education on October 7, 1982, and amended on August 4, 1983. The adoption and amendment supercede all prior policies and procedures on teacher evaluation in effect and will repeal and replace any policies or procedures in conflict.

\* \* \* \* \* \*

If videotaping is used as a specific action to be taken by the assessee, the principal is to make arrangements for the videotaping. The taping session period should be a minimum of one hour/class session with the teacher. Videotaping can provide the teacher with an opportunity to see herself as the assessment team does.

Appellant contends these two sections are not in conflict, and that the section first quoted effectively prohibits videotaping "unless requested or permitted by the teacher."

We agree with the school district's interpretation of its own administrative procedures. The language in the new section expressly authorizes the principal to make arrangements for videotaping, and the quoted section does not require that the teacher must request or give consent to the videotaping. We accordingly conclude that the videotaping of appellant did not violate any of the school district's policies or procedures.

The third point of error is overruled.

In view of our disposition of the foregoing points of error, we need not consider the school district's first cross-point in which it argues that appellant failed to offer any proof of damages. We do consider, and overrule the school district's second cross-point, in which it contends it is entitled to costs because appellant's appeal is

frivolous within the meaning of Tex.R. App.P. 84.

The judgment of the trial court is affirmed.